**STATE EX REL. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.**

[337 N.C. 236 (1994)]

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; NORTH CAROLINA NATURAL GAS CORPORATION; CAPE INDUSTRIES, INC.; FEDERAL PAPER BOARD COMPANY, INC.; LIBBEY-OWENS-FORD COMPANY; MICHAEL F. EASLEY, ATTORNEY GENERAL; AND PUBLIC STAFF-NORTH CAROLINA UTILITIES COMMISSION v. CAROLINA UTILITY CUSTOMERS ASSOCIATION, INC.; ALUMINUM CO. OF AMERICA; AND CITIES OF GREENVILLE, MONROE, ROCKY MOUNT AND WILSON AND THE GREENVILLE UTILITIES COMMISSION

No. 277PA93

(Filed 29 July 1994)

**Utilities § 286 (NCI4th)— natural gas expansion fund—economic development—findings**

In an order of the Utilities Commission establishing a natural gas expansion fund, findings concerning economic development and the benefits to existing customers in unserved areas were supported by the evidence where a review of the record indicates that numerous witnesses who were knowledgeable about the favorable economic impact of natural gas facilities on local economies and the benefits to customers of wider availability of natural gas facilities testified before the Commission and written reports and studies of the matter were also presented to the Commission. Although there may have been contrary evidence before the Commission, substantial evidence is not uncontradicted evidence. Appellants' other arguments were sufficiently like those in *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. ——, to warrant the same resolution. N.C.G.S. § 62-158; N.C.G.S. § 62-2(9).

**Am Jur 2d, Public Utilities §§ 273 et seq.**

Justice MEYER did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 prior to a determination by the Court of Appeals of an order of the North Carolina Utilities Commission establishing a natural gas expansion fund for North Carolina Natural Gas Corporation and approving initial funding of the expansion fund pursuant to N.C.G.S. § 62-158, entered 8 February 1993 in Docket No. G-21, Sub 306. Heard in the Supreme Court 1 February 1994.

**STATE** ex rel. **UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.**

[337 N.C. 236 (1994)]

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Donald W. McCoy and Jeffrey N. Surles, for applicant-appellee North Carolina Gas Corporation.*

*Michael F. Easley, Attorney General, by John R. McArthur, Chief Counsel; Margaret A. Force, Associate Attorney General; and Karen E. Long, Assistant Attorney General, for intervenor-appellee Attorney General.*

*Robert P. Gruber, Executive Director, Public Staff, by Gisele L. Rankin, Staff Attorney, for intervenor-appellee Public Staff-North Carolina Utilities Commission.*

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Sam J. Ervin, IV, for intervenor-appellant Carolina Utility Customers Association, Inc.*

*LeBoeuf, Lamb, Leiby & MacRae, by David R. Poe, M. Toler Workman, and Kristen K. Eldridge, for intervenor-appellant Aluminum Company of America.*

*Poyner & Spruill, by J. Phil Carlton, Ernie K. Murray and Nancy Bentson Essex, for intervenor-appellants Cities of Rocky Mount, Wilson, Monroe, and Greenville, and the Greenville Utilities Commission.*

*Baddour, Parker, Hine & Wellons, P.A., by E.B. Borden Parker, for Wayne County, Duplin County, Onslow County, Wayne County Economic Development Commission, Duplin County Economic Development Commission, Wayne County Chamber of Commerce, Mount Olive Chamber of Commerce, and Celotex, Inc., amici curiae.*

FRYE, Justice.

In *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. 657, 446 S.E.2d 332 (1994), decided today, we considered, *inter alia,* the constitutionality of that portion of N.C.G.S. § 62-158 which authorizes the Utilities Commission to order a North Carolina natural gas local distribution company to create a natural gas expansion fund and which authorizes the Commission to use supplier refunds to such local distribution companies to fund the expansion fund.[1] We held that "N.C.G.S. § 62-158 as enacted pursuant to

---

1. N.C.G.S. § 62-158(b) also authorizes the use of expansion surcharges and other sources as funding.

STATE ex rel. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[337 N.C. 236 (1994)]

the General Assembly's declaration of policy in N.C.G.S. § 62-2(9) is a constitutional exercise of legislative authority and that the Commission properly authorized, established, and funded the challenged expansion fund pursuant to the authority lawfully delegated to it by the legislature." *Id.*

North Carolina Natural Gas Company (NCNG) is a local distribution company within the meaning of N.C.G.S. § 62-158. NCNG filed a petition to authorize establishment of an expansion fund with the North Carolina Utilities Commission (Commission), requesting the use of supplier refunds and an expansion surcharge for funding. On 8 February 1993, the Commission entered an order establishing an expansion fund for NCNG and directed NCNG to transfer the sum of $3,713,822 in supplier refunds plus applicable interest to the fund. The Commission did not approve a surcharge "at this time." The parties did not appeal the denial of the surcharge and this matter is not before the Court.

The intervenor-appellants in this matter are as follows: Carolina Utility Customers Association (CUCA), an organization of utilities customers that frequently intervenes and participates in proceedings before the Commission; Aluminum Company of America (ALCOA), a customer of NCNG; and the Cities of Greenville, Monroe, Rocky Mount and Wilson, and the Greenville Utilities Commission (CITIES), customers on NCNG's system, and as such, the only municipal gas distribution systems in the State that are customers of a natural gas public utility. Each city maintains its own natural gas distribution system and provides service to areas not served by NCNG.

Several issues raised by various appellants in the present case are identical to those discussed and resolved today in *Carolina Utility Cust. Assn.*, 336 N.C. 657, 446 S.E.2d 332. Although the arguments of the parties in the instant case are worded somewhat differently from those of the parties in *Carolina Utility Customers Association*, their arguments are substantially alike on the following issues so as to warrant the same resolution here as in that case on these issues: whether the expansion fund mechanism embodied in N.C.G.S. § 62-2(9) and N.C.G.S. § 62-158 contravenes numerous provisions of the federal and state constitutions; whether the Commission misapprehended the scope of its discretion under N.C.G.S.§ 62-158 in making the decision to grant or deny NCNG's petition; and whether the Commission erred when it concluded that it did not have the authority to determine the constitutionality of N.C.G.S. § 62-158.

STATE ex rel. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[337 N.C. 236 (1994)]

For the reasons stated and applied by this Court today in *Carolina Utilities Customers Association*, we reject the appellants' arguments on these issues. Appellants' arguments regarding the Commission's factual findings require further attention, however.

N.C.G.S. § 62-65(a) provides that "no decision or order of the Commission shall be made or entered in any such proceeding unless the same is supported by competent material and substantial evidence upon consideration of the whole record." N.C.G.S. § 62-65(a) (1989). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State ex. rel. Comr. of Insurance v. North Carolina Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977).

CUCA and the CITIES argue that the Commission's findings concerning the economic development prospects for NCNG's franchised but unserved areas lack evidentiary support.

The Commission found as fact that:

7. The General Assembly has made the policy decision that it is necessary and in the public interest to authorize special funding methods, including the use of supplier refunds and customer surcharges, to facilitate the construction of facilities and the extension of natural gas service into unserved areas of the State where it would not be economically feasible to expand with traditional methods in order to provide infrastructure to aid industrial recruitment and economic development.

8. The establishment of an expansion fund for NCNG for the purpose of constructing lines into unserved areas in NCNG's territory that are otherwise infeasible to serve in order to provide infrastructure to aid industrial recruitment and economic development is consistent with G.S. 62-2(9) and G.S. 62-158 and is in the public interest.

9. The availability of natural gas service is an important factor in industrial recruitment. Some of the unserved areas in NCNG's franchised territory have lost industrial prospects because they do not have natural gas service available.

10. There is a reasonable prospect that the expansion of natural gas facilities into unserved areas by use of expansion funds will assist in the economic development of unserved areas in NCNG's franchised territory. Economic development will in turn

STATE ex rel. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[337 N.C. 236 (1994)]

provide a larger tax base, more employment opportunities, and a better quality of life.

As support for these findings, the Commission recited the following evidence presented at the hearing:

Several parties addressed the issue of public interest in their testimony and the Commission finds that this testimony bolsters the finding of interest in this case.

NCNG witness Wells testified that the development of natural gas facilities in unserved areas of eastern North Carolina would help attract new industry to NCNG's territory. Wells noted that the economic development that would result from wider availability of natural gas would give the State a larger tax base, provide more employment opportunities and contribute to a better quality of life. He also noted that expansion of natural gas facilities would provide a more economical fuel to homes. Witness Wells' testimony concerning benefits to the public from expansion of natural gas to unserved areas of eastern North Carolina was affirmed by the 15 public witnesses who testified in this proceeding. These public witnesses have extensive experience in industrial recruitment, economic development and local government in eastern North Carolina. The public witnesses from Elizabeth City and Wayne, Duplin, Martin and Bertie Counties all testified to specific examples of their areas losing industrial prospects as a result of not having natural gas facilities in place.

CUCA and the CITIES contend that these "bare expressions of opinions" of various witnesses are not sufficient to support the Commission's finding that "there is a reasonable prospect that the expansion of natural gas facilities into unserved areas by use of expansion funds will assist in the economic development of unserved areas in NCNG's franchised territory." Both appellants point to contrary evidence before the Commission regarding the prospects of economic development as support for their position.

Similar arguments are made by appellants in support of their position that the Commission's factual findings concerning the potential benefits to existing customers in NCNG's unserved areas are not supported by substantial evidence. The one argument raised by the CITIES that differs in scope from those raised by CUCA is that its evidence showed that participation by the CITIES in NCNG's expansion fund would restrict their own development into unserved areas. In

STATE ex rel. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[337 N.C. 236 (1994)]

the portion of the order designated Evidence and Conclusions for Findings Of Fact Nos. 16-19, the Commission noted that the CITIES' witnesses "acknowledged that a portion of their revenues are provided by customers outside city limits and that utility operations are profitable and make considerable contributions to the [CITIES'] general fund." Public Staff witness Hoard testified that he did not see any basis for the customers of the CITIES to be treated differently than a customer situated in a municipality served directly by NCNG. The Commission concluded that it was appropriate for all classes of customers to participate in the funding of the expansion fund and that "granting some customers exemptions [would] open the door to many other 'special' circumstances."

Though there may have been contrary evidence before the Commission which supported appellants' positions regarding the prospects of economic development and the potential benefits arising from creation of the expansion fund, substantial evidence is not uncontradicted evidence but instead "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *North Carolina Fire Ins. Rating Bureau,* 292 N.C. at 80, 231 S.E.2d at 888. A review of the record indicates that numerous witnesses who were knowledgeable about the favorable economic impact of natural gas facilities on local economies and the benefits to customers of wider availability of natural gas facilities testified before the Commission. Written reports and studies of the matter were also presented to the Commission for its consideration. After a careful review of the record, we conclude that the Commission's findings are supported by substantial evidence.

CUCA is the only appellant who has specifically raised the issue of whether the Commission made adequate findings and conclusions in its order. Quoting *State ex rel. Utilities Comm. v. Conservation Council of North Carolina,* 312 N.C. 60, 62, 320 S.E.2d 679, 682 (1984), CUCA contends that the order lacks the required "summary of [CUCA's argument] and its rejection of the same" in contravention of N.C.G.S. § 62-79 which deals with the required specificity of final orders and decisions of the Commission.

As we concluded today in *Carolina Utility Cust. Assn.,* 336 N.C. at 670, 446 S.E.2d at 340, "by making this argument, CUCA engrafts a requirement upon N.C.G.S. § 62-79 which does not exist." We hold that the order taken as a whole is "sufficient in detail to enable the court on appeal to determine the controverted ques-

STATE ex rel. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[337 N.C. 236 (1994)]

tions presented in the proceedings" and contains the necessary findings of fact and conclusions of law. N.C.G.S. § 62-79(a) (1989). For these reasons, this argument is rejected.

We hold that the Commission's order properly authorized, established, and funded the challenged expansion fund pursuant to the authority lawfully delegated to it by the legislature. The order of the Commission is affirmed.

AFFIRMED.

Justice MEYER did not participate in the consideration or decision of this case.